In the Matter of Disciplinary Proceedings against HOWARD L. MONTGOMERY, an Attorney of Fort Edward, N. Y., Respondent.

Third Department, July 2, 1941.

*James H. Seeley*, in person.

*Howard L. Montgomery*, in person.

PER CURIAM. On May 25, 1939, Howard L. Montgomery, an attorney of Fort Edward, N. Y., was suspended from the practice of the law for a period of three months and until the further order of this court. (257 App. Div. 898.) The charges were heard by an official referee who recommended a censure. This court, however, meted out a three months' suspension. The order of suspension was served on July 7, 1939. In April, 1940, there was filed with this court the affidavit of one James H. Seeley alleging that on October 1, 1939, Seeley, who then knew that Montgomery had been suspended, retained him to act as his attorney in connection with an action which he desired to bring in the Supreme Court, that he then paid Montgomery a retainer of fifty dollars and thereafter paid him forty-five dollars more on November first. In answer to these charges Montgomery alleged that between September 1, 1937, and May 1, 1939, he rendered services to Seeley of the reasonable value of one hundred dollars and that the ninety-five dollars was paid on account of these services, leaving a five-dollar balance still due. He also denied that he rendered any services whatsoever for Seeley after June 7, 1939. The matter was referred to the Washington County Bar Association. A committee conducted hearings and made its report, which finds that the payments were made by Seeley to Montgomery in the belief that he was paying a retainer for legal services to be performed in the nature of an action for false arrest and that Montgomery accepted such payments knowing that the claimant had such understanding.

From the hearings before the committee and the affidavits filed in this proceeding, it appears that Seeley was at one time an inmate of Marshall Sanitarium at Troy, an institution for the insane, that he was convicted two or three times for assaulting his wife and that he was an inmate of a State insane asylum for several years before his discharge in 1937.

Montgomery, acting as attorney, obtained Seeley's release from the asylum in 1937, and was fully paid for those services. Seeley swore that he did not on any occasion from August 1, 1937, to May 1, 1939, consult Montgomery in any way except on a matter concerning Seeley's sister, which is here immaterial, and that he was not indebted to Montgomery for any services rendered between those dates. Before concluding his testimony, however, Seeley admitted these statements of his to have been false and that he did consult Montgomery on at least fifteen or sixteen different occasions during the period in question, many of these consultations taking place in Montgomery's home in Fort Edward in which his law office was located, that they related to an alleged action for false arrest which Seeley believed he had against the physicians and officers in connection with his commitment to the insane asylum, that he consulted Montgomery about bringing suit against his wife for a divorce, that he retained Montgomery to effect a reconciliation with his wife, that on one occasion Montgomery called on the wife alone in his behalf and on another occasion Seeley and Montgomery called upon the wife together, that he gave Montgomery the names of certain alleged witnesses in connection with his domestic difficulties and that Montgomery interviewed these witnesses in his behalf. Montgomery testified that between the dates in question Seeley came to see him over fifty times on these various matters, that he traveled to Utica, Glens Falls, Saratoga, Ballston Spa and Northumberland on business matters for Seeley and that he procured copies of portions or all of the records of the State hospital with relation to Seeley's case. It further appeared that he had been paid nothing for these services except the two payments of fifty dollars and forty-five dollars respectively. Montgomery's testimony was substantiated to a considerable part by the testimony of Seymour Seeley, a brother of the complainant.

The committee of the Bar Association gives no reasons whatsoever for its findings and its report does not discuss the testimony or attempt to explain Seeley's many vagaries and contradictions. Consequently, such report is not entitled to as much weight as would otherwise be the case. A thorough examination of all the testimony leads us to the conclusion that Seeley is utterly

irresponsible mentally, that no weight can be given to his testimony and no reliance placed upon him. For these reasons the report of the committee should be disapproved and the charges dismissed.

BLISS, HEFFERNAN and SCHENCK, JJ., concur; CRAPSER, J., dissents and votes to sustain the report of the committee; HILL, P. J., refrains from voting for the following reasons: The attorney is now under suspension for three months and until the further order of this court (order of this court dated May 25, 1939). No application for reinstatement has been made. When and if an application is made these charges and the conduct of the attorney during the interim since his suspension may then be better considered.

Charges dismissed.